# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN MEZZALINGUA ASSOCIATES, LLC<br>d/b/a JMA WIRELESS,<br><br>Plaintiff,<br><br>v.<br><br>AMPHENOL CORPORATION and<br>CHANGZHOU AMPHENOL FUYANG<br>COMMUNICATION EQUIPMENT CO., LTD.,<br><br>Defendants. | C.A. No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff John Mezzalingua Associates, LLC d/b/a JMA Wireless ("JMA"), by and through its undersigned counsel, hereby files the following Complaint against Defendants Amphenol Corporation and Changzhou Amphenol Fuyang Communication Equipment Co., Ltd. (collectively, "Defendants"), and alleges as follows:

## NATURE OF ACTION

1. This action for patent infringement, brought by JMA under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, seeks relief arising out of Defendants' infringement of U.S. Patent Nos. 8,591,253 (the "'253 Patent"), 8,591,254 (the "'254 Patent"), 8,602,818 (the "'818 Patent"), 8,388,375 (the "'375 Patent"), and 8,708,737 (the "'737 Patent") (collectively, the "Patents-in-Suit").

2. JMA is the owner of the Patents-in-Suit.

3. JMA asserts infringement of all of the Patents-in-Suits against Defendants for their unauthorized making, using, offering to sell, and/or selling in the United States, and/or importing into the United States a line of radio frequency compression connectors, including, without

limitation, compression connectors bearing model numbers AFA297-1, AFDF07-1, and/or AFDF07-2 (the "Accused Products").

## THE PARTIES

4. JMA is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 140 Cortland Avenue, Syracuse, New York 13202.

5. Amphenol Corporation ("Amphenol") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 358 Hall Avenue, Wallingford, Connecticut 06492.

6. Upon information and belief, Changzhou Amphenol Fuyang Communication Equipment Co., Ltd. ("Amphenol Fuyang") is an entity organized under the laws of China, with its principal place of business located at No. 6, Fengqi Road, Wujin High-Tech District, Changzhou, Jiangsu, China. On its website Amphenol Fuyang states that "Changzhou Amphenol Fuyang Communication Equipment Co., Ltd. established in 1996, is one of the Amphenol division[s] in China, specializing in manufacturing, managing, researching and developing radio frequency coaxial connectors, jumper cables and related accessories used for wireless mobile base station such as connectors for mobile base station antenna, indoor HF connectors, and leaking connectors for metro application." (*See* https://bit.ly/44AIjwW.) Upon information and belief, Amphenol Fuyang is a wholly owned subsidiary of Amphenol.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over the asserted claims pursuant to 28 U.S.C. §§ 1331 and 1338, and 35 U.S.C. § 281.

8. The Court has personal jurisdiction over Amphenol because Amphenol is a Delaware corporation, because Amphenol has designated an agent in Delaware for service of

process, and/or because Amphenol has been conducting and/or is presently conducting business in the District of Delaware on a regular basis.

9. The Court has personal jurisdiction over Amphenol Fuyang at least because, upon information and belief, Amphenol Fuyang contracts to supply services or things in Delaware, causes tortious injury in Delaware, and/or causes tortious injury outside Delaware by an act or omission outside Delaware and regularly does or solicits business, engages in any other persistent course of conduct in Delaware and/or derives substantial revenue from services, or things used or consumed in Delaware.

10. In addition, the Court has personal jurisdiction over both Defendants because they both have knowingly and actively engaged in acts that have infringed and will infringe the claims of the Patents-in-Suit in the District of Delaware.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1400 and/or 28 U.S.C. § 1391(c)(3). Amphenol is incorporated in Delaware, and therefore resides in Delaware for the purposes of Section 1400, and Amphenol Fuyang is not a resident in the United States within the meaning of Section 1391(c)(3).

## FACTUAL ALLEGATIONS

### *Background*

12. JMA is a leading global innovator in mobile wireless connectivity solutions that ensure infrastructure reliability, streamline service operations, and maximize wireless performance. Employing powerful, patented innovations, JMA's solutions portfolio is proven to lower the cost of operations while ensuring lifetime quality levels in equipment and unrivaled performance for coverage and high-speed mobile data. JMA invests a substantial amount of capital in product development and improvement to maintain its position as a leading producer of

innovative connective wireless technology products. JMA has hundreds of issued patents, including the Patents-in-Suit.

13. Upon information and belief, Defendants use, import, offer for sale, and/or sell the Accused Products in Delaware and/or elsewhere in the United States. Such use, importation, offers for sale, and/or sale of the Accused Products is in direct competition with JMA's connector products.

### *Patents-in-Suit*

14. The Patents-in-Suit claim priority to U.S. patent application Serial No. 12/753,735, filed on April 2, 2010, and which issued as U.S. Patent No. 7,934,954 (the "'954 Patent) on May 3, 2011.

15. The '253 Patent was filed on July 23, 2013 and issued on November 26, 2013. The '253 Patent is attached hereto as Exhibit A.

16. The '254 Patent was filed on August 9, 2013 and issued on November 26, 2013. The '254 Patent is attached hereto as Exhibit B.

17. The '818 Patent was filed on August 9, 2013 and issued on December 10, 2013. The '818 Patent is attached hereto as Exhibit C.

18. The '375 Patent was filed on April 26, 2011 and issued on March 5, 2013. The '375 Patent is attached hereto as Exhibit D.

19. The '737 Patent was filed on March 4, 2013 and issued on April 29, 2014. The '737 Patent is attached hereto as Exhibit E.

20. JMA is the sole owner of all right, title, and interest in the Patents-in-Suit, including the right to enforce the Patents-in-Suit.

21. JMA has not licensed Defendants to practice the Patents-in-Suit, and Defendants have no right or authority to license others to practice the Patents-in-Suit.

22. In wireless communications systems, such as cellular networks operated by Verizon, T-Mobile, AT&T, and other wireless carriers, coaxial cables are used to connect local cell towers to the rest of the communications network. To connect those coaxial cables to the equipment located on the cell towers, the wireless carriers use cable connectors to bridge the gap between the end of the coaxial cable and the equipment. Essentially, connectors extend the structure of the cable all the way to the equipment.

23. This junction is a common failure point in wireless networks, usually because the connector was not properly installed onto the cable. Early cable connectors literally had to be built by installers onto the coaxial cable in the field. This was time consuming and cumbersome, and it was what is known in the industry as craft sensitive, meaning that a successful installation was dependent on the experience of the installer. To get around this problem, some in the industry started to use cable connectors that were pre-installed in a factory onto a length of cable called a jumper. However, as the Patents-in-Suit explain, "each particular cellular communication tower in a cellular network generally requires various custom lengths of coaxial cable, necessitating the selection of various standard-length jumper cables that is each generally longer than needed, resulting in wasted cable. Also, employing a longer length of cable than is needed results in increased insertion loss in the cable. Further, excessive cable length takes up more space on the tower. Moreover, it can be inconvenient for an installation technician to have several lengths of jumper cable on hand instead of a single roll of cable that can be cut to the needed length." (*See, e.g.*, '253 Patent, Col. 2, lines 32-53.)

24.     The Patents-in-Suit address these long-standing problems by way of a novel one-piece compression connector design that is easy to use, provides reliable performance, and is field-installable.

25.     Some of these benefits are depicted in the screenshots below taken from two YouTube videos published by JMA.

**"JMA vs. Traditional Connectors" (https://bit.ly/3JQvkxo)**



**"JMA Compression Connector Technology" (https://bit.ly/3wsGvcI)**






26. Although the specific scope of the invention is delineated by the various elements in the claims, and while the claims may use different words to describe them, as illustrated in the figure below, and as a general matter, connectors designed in accordance with the inventions disclosed and claimed in the Patents-in-Suit have a nut for attaching the connector to an equipment port, a conductive pin for insertion into an opening on the equipment port, a body, a collet on the conductive pin for receiving the outer conductor of the cable, a mandrel and a clamp for engaging with the outer conductor of the cable, a compression sleeve that aids in the attachment of the connector to the cable, and a jacket seal that presses up against the jacket of the cable to form a weather seal and helps with cable retention.



### *The Accused Products*

27. Upon information and belief, and based on present information that is publicly available to JMA, a non-exhaustive list of radio frequency compression connector model numbers offered by Defendants includes, without limitation, AFA297-1, AFDF07-1, and/or AFDF07-2.

28. JMA expressly reserves the right to assert infringement against other of Defendants' connectors, particularly, but without limitation, similarly designed connectors that JMA discovers have been or will be made, sold, offered for sale, and/or imported in the United States.

29. Although the Accused Products have some differences related mostly to the type of cable they are used with, as illustrated in the table below showing cross-sections of each of the Accused Products in both the open and closed/engaged position on cable, they are identical in terms of how they operate and infringe the Patents-in-Suit.

| Model Number | Open Position | Closed Position |
|---|---|---|
| AFDF07-1 | | |
| AFDF07-2 | | |
| AFA297-1 | | |

30. As shown in the figures below, and using Model No. AFDF07-1 as a representative example, the Accused Products have the same key elements as disclosed in the Patent-in-Suit and shown above.





**Defendants' Knowledge of the Patents-in-Suit**

31. Upon information and belief, Defendants are sophisticated companies in the industry that keep appraised of relevant patents (either alone or through the actions of its related companies).

32. Defendants have been aware of the inventions disclosed in the Patents-in-Suit at least since 2014 when, in connection with prosecution of one of their own patents (U.S. Patent No. 9,190,762), an Examiner at the United States Patent and Trademark Office rejected Defendants' pending claims as anticipated by the '954 Patent, the parent patent that issued from the earliest priority application leading to the Patents-in-Suit. Upon information and belief, Defendants have kept apprised of the developments in the patent family to which the Patents-in-Suit belong. Failure to do so would have been irresponsible under the circumstances and would have amounted to willful blindness.

33. In light of the foregoing, Defendants, upon information and belief, knew or should have known of each of the Patents-in-Suit on or about the date each such patent issued, and knew or should have known that their manufacture, use, importation, offer for sale, and/or sale of the Accused Products infringed each of the Patents-in-Suit on or about the time each such patent issued and/or on or about the time Defendants made, used, imported, offered for sale and/or sold the Accused Products

## COUNT I
### (*Infringement of the '253 Patent*)

34. JMA repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

35. By way of an example and without limitation, Defendants have directly infringed and continue to directly infringe at least Claim 44 of the '253 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the Accused Products in the United States, without license or authorization by JMA.

36.     As show in the chart attached hereto as Exhibit F, the Accused Products include at least each of the elements of Claim 44 of the '253 Patent and Defendants' manufacture, importation, use, offer for sale and/or sale of such products in the United States constitutes infringement of the '253 Patent.

37.     Defendants' infringement has caused and continues to cause JMA irreparable harm and damages in an amount to be proven at trial.

38.     Upon information and belief, Defendants' unlawful infringing activity will continue unless and until Defendants are enjoined by this Court from further infringement, and, at least since the commencement of this suit, such infringement has been willful, deliberate, and intentional.  Defendants' continuing infringement since the commencement of this suit will cause JMA further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

## COUNT II
### (*Infringement of the '254 Patent*)

39.     JMA repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

40.     By way of an example and without limitation, Defendants have directly infringed and continue to directly infringe at least Claim 37 of the '254 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the Accused Products in the United States, without license or authorization by JMA.

41.     As show in the chart attached hereto as Exhibit G, the Accused Products include at least each of the elements of Claim 37 of the '254 Patent and Defendants' manufacture,

importation, use, offer for sale and/or sale of such products in the United States constitutes infringement of the '254 Patent.

42. Defendants' infringement has caused and continues to cause JMA irreparable harm and damages in an amount to be proven at trial.

43. Upon information and belief, Defendants' unlawful infringing activity will continue unless and until Defendants are enjoined by this Court from further infringement, and, at least since the commencement of this suit, such infringement has been willful, deliberate, and intentional. Defendants' continuing infringement since the commencement of this suit will cause JMA further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

## COUNT III
### (*Infringement of the '818 Patent*)

44. JMA repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

45. By way of an example and without limitation, Defendants have directly infringed and continue to directly infringe at least Claim 46 of the '818 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and or importing the Accused Products in the United States, without license or authorization by JMA.

46. As show in the chart attached hereto as Exhibit H, the Accused Products include at least each of the elements of Claim 46 of the '818 Patent and Defendants' manufacture, importation, use, offer for sale and/or sale of such products in the United States constitutes infringement of the '818 Patent.

47. Defendants' infringement has caused and continues to cause JMA irreparable harm and damages in an amount to be proven at trial.

48. Upon information and belief, Defendants' unlawful infringing activity will continue unless and until Defendants are enjoined by this Court from further infringement, and, at least since the commencement of this suit, such infringement has been willful, deliberate, and intentional. Defendants' continuing infringement since the commencement of this suit will cause JMA further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

## COUNT IV
### (*Infringement of the '375 Patent*)

49. JMA repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

50. By way of an example and without limitation, Defendants have directly infringed and continue to directly infringe at least Claim 12 of the '375 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing the Accused Products in the United States, without license or authorization by JMA.

51. As show in the chart attached hereto as Exhibit I, the Accused Products include at least each of the elements of Claim 12 of the '375 Patent and Defendants' manufacture, importation, use, offer for sale and/or sale of such products in the United States constitutes infringement of the '375 Patent.

52. Defendants' infringement has caused and continues to cause JMA irreparable harm and damages in an amount to be proven at trial.

53. Upon information and belief, Defendants' unlawful infringing activity will continue unless and until Defendants are enjoined by this Court from further infringement, and, at least since the commencement of this suit, such infringement has been willful, deliberate, and intentional. Defendants' continuing infringement since the commencement of this suit will cause JMA further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

## COUNT V
### (*Infringement of the '737 Patent*)

54. JMA repeats and reasserts all of the foregoing allegations as if they were stated in full herein.

55. By way of an example and without limitation, Defendants have directly infringed and continue to directly infringe at least Claim 1 of the '737 Patent, within the meaning of 35 U.S.C. § 271(a) and either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and or importing the Accused Products in the United States, without license or authorization by JMA.

56. As show in the chart attached hereto as Exhibit J, the Accused Products include at least each of the elements of Claim 1 of the '737 Patent and Defendants' manufacture, importation, use, offer for sale and/or sale of such products in the United States constitutes infringement of the '737 Patent.

57. Defendants' infringement has caused and continues to cause JMA irreparable harm and damages in an amount to be proven at trial.

58. Upon information and belief, Defendants' unlawful infringing activity will continue unless and until Defendants are enjoined by this Court from further infringement, and, at least since the commencement of this suit, such infringement has been willful, deliberate, and

intentional. Defendants' continuing infringement since the commencement of this suit will cause JMA further irreparable harm and damages, and entitle it to recover, among other things, treble damages, attorney's fees, and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, JMA prays for judgment in its favor and against Defendants, collectively and individually, as follows:

A. Entry of judgment that Defendants have infringed one or more claims of the Patents-in-Suit;

B. Entry of judgment that preliminarily and/or permanently enjoins Defendants and their representatives, assigns or successors, or any subsidiaries, parents, divisions, agents, servants, employees thereof, and/or those in privity with Defendants from infringing the Patents-in-Suit;

C. An award of compensatory damages for JMA as a result of infringement, as provided in 35 U.S.C. § 284, the extent of which will be determined at trial, but in no event less than a reasonable royalty, together with interest and costs;

D. A determination that Defendants' acts of infringement of one or more claims of the Patents-in-Suit have been, and continue to be, egregious and/or willful, and that JMA is entitled to an award of enhanced damages of up to three times the amount of actual damages pursuant to 35 U.S.C. § 284;

E. A determination that, pursuant to 35 U.S.C. § 285, this is an exceptional case and that JMA be awarded its reasonable attorney's fees;

F. An award of interest on any judgment rendered in this action;

G. An award of JMA's costs in this action; and

H. Such other and further relief as is just and proper.

## **JURY DEMAND**

JMA demands a trial by jury on all issues so triable.

Dated: May 13, 2024

*Of Counsel:*

Douglas J. Nash
John D. Cook
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
(315) 425-2700
dnash@barclaydamon.com
jcook@barclaydamon.com

Naresh K. Kannan
BARCLAY DAMON LLP
80 State Street
Albany, New York 12207
(518) 429-4200
nkannan@barclaydamon.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Pilar G. Kraman*

Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for John Mezzalingua Associates LLC.*